UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARLWYNN J. TURNER (#94983)

VERSUS                                             CIVIL ACTION

N. BURL CAIN, ET AL                                NUMBER 12-598-JJB-SCR

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, April 29, 2013.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARLWYNN J. TURNER (#94983)

VERSUS                                           CIVIL ACTION

N. BURL CAIN, ET AL                              NUMBER 12-598-JJB-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the defendants' Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and 12(b)(1).  Record document number 19. The motion is opposed.[1]

Pro se plaintiff, an inmate confined at Wade Correctional Center, Homer, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana State Penitentiary ("LSP") Warden N. Burl Cain, Deputy Warden Darrel Vannoy and Asst. Warden for Security Leslie Dupont.  Plaintiff alleged that he was transferred to another facility in retaliation for exercising his First Amendment rights.

For the reasons which follow, the defendants' motion should be granted in part and denied in part.

**I. Factual Allegations**

Plaintiff alleged that on April 16, 2011, he attended the prison rodeo where he had hobby craft items for sale to the public.

---

[1] Record document number 23.

While either explaining his pricing or negotiating the price of the items he had for sale, the plaintiff informed potential customers that Warden Cain charged a "tax" or fee for each hobby craft item the plaintiff sold at the prison rodeo. Plaintiff alleged that, unbeknownst to him, Asst. Warden Dupont's wife was one of the people he spoke to regarding the alleged fee.

Plaintiff alleged that later in the afternoon he was escorted to an office where Asst. Warden Dupont said he received reports that the plaintiff told potential customers that Warden Cain charged a fee on all hobby craft items sold at the prison rodeo. Plaintiff alleged that Asst. Warden Dupont then ordered him to leave the rodeo grounds and prohibited him from participating in hobby craft sales at the prison rodeo the next day. Plaintiff alleged that on April 18, 2011, Warden Cain was briefed by other personnel regarding incidents that took place during the prison rodeo.

Plaintiff alleged that on April 28, 2011, Warden Cain ordered the emergency transfer of the plaintiff and 14 other inmates. Plaintiff alleged that his personal property was placed in bundles and he was taken to the front gate to await transfer. Plaintiff alleged that Dy. Warden Vannoy told the inmates that Warden Cain was angry and displeased with them because of their behavior during the prison rodeo. Plaintiff alleged that he was initially transferred to Hunt Correctional Center for approximately 59 days

before being transferred to David Wade Correctional Center.

Plaintiff alleged that as a result of the retaliatory transfer, his custody status was changed from minimum security to maximum security, he lost a desirable job at the LSP radio station and as an inmate minister, and he was transferred to a prison facility hundreds of miles from family and friends. Plaintiff alleged that prior to the transfer he had a reputation as a model prisoner and is now falsely characterized as a rebellious, troublesome prisoner.

## II. Applicable Law and Analysis

Defendants moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P.

### A. Motion to Dismiss Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009)

3

(quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, 127 S.Ct. at 2200 (citations omitted). But even a pro se complainant must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950. The court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Id.* at 1949-50 (internal quotation marks omitted).

### B. Eleventh Amendment Immunity

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacities.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al,* 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official

4

in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a § 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14. Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for

actions taken by each of them under color of state law which caused the deprivation of constitutional rights. However, the plaintiff did not seek prospective injunctive relief therefore his claims against the defendants in their official capacities, to the extent that there are any, are not actionable under § 1983.

**C. 42 U.S.C. § 1997e(e)**

Defendants argued that the plaintiff's claims are subject to dismissal pursuant to 42 U.S.C. § 1997e(e) because the plaintiff failed to allege that he sustained a physical injury.

Subsection (e) of 42 U.S.C. § 1997e provides:

> (e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

A review of the allegations in the complaint showed that the plaintiff failed to allege that he sustained any physical injury as a result of the defendants' alleged actions. The failure to allege physical injury precludes recovery of compensatory damages for mental or emotional injuries. Although § 1997e(e) prohibits the plaintiff from recovering compensatory damages, it does not bar his ability to recover nominal and punitive damages for constitutional violations despite the lack of any physical injury. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007). Of course, the plaintiff must prove a deprivation of a constitutional right to obtain relief in any form of damages.

6

**D. Claims against Dy. Warden Vannoy and Asst. Warden Dupont**

Plaintiff named Dy. Warden Vannoy and Asst. Warden Dupont as defendants but failed to allege any facts against them which rise to the level of a constitutional violation. Specifically, the plaintiff alleged that Asst. Warden Dupont told him he was aware that the plaintiff informed potential customers that Warden Cain imposed a "tax" on the sale of hobby craft items and then ordered him to leave the rodeo grounds and prohibited him from participating in the sale of his hobby craft items at the prison rodeo the next day. Plaintiff alleged that Dy. Warden Vannoy told him and other inmates being transferred that Warden Cain was angry and displeased with them because of their behavior during the prison rodeo.

To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983).

None of the allegations against Dy. Warden Vannoy and Asst. Warden Dupont rise to the level of a constitutional violation.

**E. Retaliation**

Plaintiff alleged that Warden Cain transferred him to a less desirable prison in retaliation for exercising his First Amendment

right of freedom of speech.

To prevail on a claim of retaliation, a prisoner must establish four elements (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003);  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

It is well-established that a prisoner retains certain First Amendment rights notwithstanding his incarceration.  *See, e.g., Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800 (1974). Nevertheless, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Bell v. Wolfish*, 441 U.S. 520, 545-46, 99 S.Ct. 1861 (1979) (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049 (1948)).  In the First Amendment context, a prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 94 S.Ct. 2800.  It is generally recognized that security, order, and rehabilitation are legitimate penological objectives.  *E.g., Procunier v. Martinez*, 416 U.S. 396, 413-14, 94 S.Ct. 1800 (1974).

Plaintiff's allegations that he was transferred in retaliation

for exercising his right to free speech is sufficient to state a claim upon which relief can be granted. *Joseph v. Dykes*, 368 Fed. Appx. 511 (5th Cir. 2010).

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and 12(b)(1) be granted in part, dismissing the plaintiff's claims against defendants Dy. Warden Darrel Vannoy and Asst. Warden Leslie Dupont, dismissing the plaintiff's official capacity claims, and dismissing the plaintiff's compensatory damages claim pursuant to 42 U.S.C. § 1997e(e).

In all other respects the defendants' Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) and 12(b)(1) should be denied and this matter should be referred back to the magistrate judge for further proceedings on the plaintiff's retaliation claim against Warden Burl Cain.

Baton Rouge, Louisiana, April 29, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE