UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CARLWYNN J. TURNER (#94983)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 12-598-JJB-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, November 4, 2013.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CARLWYNN J. TURNER (#94983)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 12-598-JJB-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the parties' cross motions for summary judgment.  Record document numbers 48, Defendant's Motion for Summary Judgment, and record document number 54, Plaintiff's Cross-Motion for Summary Judgment.

Pro se plaintiff, an inmate now confined at David Wade Correctional Center ("DWCC"), Homer, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana State Penitentiary ("LSP") Warden N. Burl Cain.[1]  Plaintiff alleged that he was transferred from LSP to DWCC in retaliation for exercising his First Amendment rights.

Defendant Warden Cain moved for summary judgment relying on a statement of undisputed facts, his affidavit, responses to interrogatories, a copy of Department Regulation No. B-02-001, and a copy of the plaintiff's complaint.

_____

[1] Plaintiff's claims against defendants Dy. Warden Darrel Vannoy and Asst. Warden Leslie Dupont, his official capacity claim and his compensatory damages claim were previously dismissed. Record document number 28.

Plaintiff moved for summary judgment relying on a statement of undisputed facts, his affidavit, a copy of a notice regarding inmates being transferred to Hunt Correctional Center, discovery responses, a copy of his conduct report, copies of pleadings, a copy of Appendix VII to Department Regulation B-02-001, a copy of a portion of Department Regulation B-02-001 pertaining to geographical transfers, and the results of the Administrative Remedy Procedure.

## I. Factual Allegations

Plaintiff alleged that on April 16, 2011, he attended the prison rodeo where he had hobby craft items for sale to the public. Apparently while either explaining his pricing or negotiating the price of the items he had for sale, the plaintiff informed potential customers that Warden Cain charged a "tax" or fee for each hobby craft item an inmate sold at the prison rodeo. Plaintiff alleged that unbeknownst to him, Asst. Warden Dupont's wife was one of the people he spoke to regarding the alleged fee.

Plaintiff alleged that later that afternoon he was escorted to an office where Asst. Warden Dupont told him that he (Asst. Warden Dupont) had received reports that the plaintiff told potential customers that Warden Cain charged a fee on all hobby craft items sold at the prison rodeo.  Plaintiff alleged that Asst. Warden Dupont then ordered him to leave the rodeo grounds and prohibited him from participating in the sale of his hobby craft items at the

2

prison rodeo the next day.  Plaintiff alleged that on April 18, 2011, Warden Cain was briefed by other personnel regarding incidents that took place during the  prison rodeo.

Plaintiff alleged that on April 28, 2011, Warden Cain ordered the emergency transfer of the plaintiff and 14 other inmates. Plaintiff alleged that his personal property was placed in bundles and he was transported to the front gate to await transfer. Plaintiff alleged that Dy. Warden Vannoy told the inmates that Warden Cain was angry and displeased with them because of their behavior during the prison rodeo.  Plaintiff alleged that he was initially transferred to Hunt Correctional Center for approximately 59 days before being transferred to DWCC.

Plaintiff alleged that this was a retaliatory transfer, and as a result his custody status was changed from minimum security to maximum security, he lost a desirable job at the LSP radio station and as an inmate minister, and he was transferred to a prison facility hundreds of miles from family and friends.  Plaintiff alleged that prior to the transfer he had a reputation as a model prisoner and is now falsely characterized as a rebellious, troublesome prisoner.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to

3

judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  Supporting affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(c).  The court need only consider cited materials, but it may consider other materials in the record.  Rule 56(c)(1)(3).

### B. Retaliation

Plaintiff alleged that Warden Cain transferred him to a less desirable prison in retaliation for exercising his First Amendment right of freedom of speech.

To prevail on a claim of retaliation, a prisoner must establish four elements  (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003);  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

It is well-established that a prisoner retains certain First Amendment rights notwithstanding his incarceration.  *See, e.g., Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800 (1974). Nevertheless, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545-46, 99 S.Ct. 1861

4

(1979) (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049 (1948)).  In the First Amendment context, a prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 94 S.Ct. 2800.  It is generally recognized that security, order, and rehabilitation are legitimate penological objectives. *E.g., Procunier v. Martinez*, 416 U.S. 396, 413-14, 94 S.Ct. 1800 (1974).

As an incident of his incarceration, a prisoner lacks the same freedom to criticize he would enjoy outside of prison. *Gibbs v. King*, 779 F.2d 1040, 1045-46 (5th Cir.), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975 (1986).  Although a prisoner has a general First Amendment right to criticize prison officials, he must exercise that right "in a *manner* consistent with his status as a prisoner." *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004)(italics in original).

Where internal grievance procedures are available, a prison can circumscribe the *manner* in which a grievance may be brought or or the right to criticize is exercised. *Id.*  Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment.  *Id.*  An inmate may file a grievance against an officer with whom he has a disagreement, but the First Amendment does not protect an inmate who publicly verbally confronts an officer.  *Id.*

The summary judgment evidence showed that internal grievance procedures were available to the plaintiff, and he could have challenged the warden's alleged "tax" or fee in that forum.  The summary judgment evidence showed that the plaintiff instead chose to  publicly complain about the warden's "tax" or fee by verbally informing potential customers attending the prison rodeo that Warden Cain deducted 18% (for cash sales) or 22% (for credit sales) from the amount the inmate received from the sale.[2]  The manner of the plaintiff's expression was inconsistent with his status as a prisoner and therefore is not afforded First Amendment protection.

As noted above, to establish a retaliation claim, an inmate must allege a specific constitutional right and that the defendant intended to retaliate against the inmate for his exercise of that right.   "If the inmate is unable to point to a specific constitutional right that has been violated, the claim will fail." *Freeman*, 369 F.3d at 864; *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), (citing *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996)).  Even assuming that the plaintiff's transfer to DWCC was

---

[2]  Record document number 54-12, Exhibit J, Plaintiff's Affidavit, p. 2,  § 2:

> I made the complaint to potential customers that Mr. Cain deducted a 18% cash tax from the inmate hobby craft sale and he (Mr. Cain) deducted 22% credit card tax from the inmate hobby craft sale.  The customers had no knowledge that inmates paid taxes on the sale of hobby craft.  Mr. Cain never posted any signs or added the taxes on the inmate hobby craft sales ticket to inform the public that inmates pay taxes.

because he informed potential customers of the warden's "tax" or fee, the plaintiff has not demonstrated a violation of his Fist Amendment rights.   Therefore, defendant is entitled to summary judgment as a matter of law.

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that the plaintiff's motion for summary judgment be denied, that the defendant's motion for summary judgment be granted and this action be dismissed.

Baton Rouge, Louisiana, November 4, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE