# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CARLWYNN J. TURNER**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 12-598-BAJ-EWD**

**N. BURL CAIN, ET AL.**

## NOTICE

 Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

 In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

 ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 28, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CARLWYNN J. TURNER                                    CIVIL ACTION

VERSUS                                               NO. 12-598-BAJ-EWD

N. BURL CAIN, ET AL.


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment, filed by defendants, Burl N. Cain, former warden of the Louisiana State Penitentiary ("Angola") ("Warden Cain") and deputy warden Leslie Dupont ("Deputy Dupont") (collectively "Defendants").[1]  The Motion is opposed by plaintiff Carlwynn J. Turner .[2]  Defendants have filed a Reply,[3] to which Plaintiff has filed a Sur-Reply.[4]

Also before the Court is Plaintiff's Motion to Strike Successive Motion for Summary Judgment[5] and Plaintiff's Motion to Strike Untimely Raised Defense.[6]  Both motions are opposed.[7]

For the following reasons, the undersigned recommends[8] that the Motion for Summary Judgment be **DENIED.**  The undersigned also recommends that Plaintiff's Motion to Strike Successive Motion for Summary Judgment be **DENIED.**  It is further recommended that Plaintiff's Motion to Strike Untimely Raised Defense also be **DENIED.**

---

[1] R. Doc. 85.
[2] R. Doc. 90.
[3] R. Doc. 97.
[4] R. Doc. 101.
[5] R. Doc. 89.
[6] R. Doc. 102.
[7] *See*, R. Docs. 94 and 103.
[8] The Motion for Summary Judgment was referred to the undersigned by District Judge James J. Brady on June 14, 2017.  R. Doc. 88.  Because the Motion for Summary Judgment is a dispositive motion, the undersigned is issuing a report and recommendation on the Motion for Summary Judgment, and the related motions to strike, rather than an Order.

## I.     Factual and Procedural Background[9]

On September 24, 2012, Plaintiff, a prisoner at the Louisiana Department of Corrections ("LDOC"), filed this *pro se* civil rights action against Warden Cain, Deputy Dupont and deputy warden David Vannoy ("Deputy Vannoy"), alleging that he was transferred from Angola to Elayn Hunt Correctional Center in retaliation for exercising his First Amendment right of free speech. [10] Plaintiff asserts that on April 16, 2011, while selling crafts to members of the public attending the Angola Prison Rodeo (hereinafter the "Angola Rodeo"), several potential buyers attempted to negotiate with him regarding the price of his goods.  Plaintiff claims that he explained to "the people standing around his hobby craft booth" that he could not reduce his prices "because Warden Cain takes 18% percent from individual cash sales, and 22% percent from individual credit card sales."[11]  Plaintiff alleges that he shared this information with the public "because it affected his hobby craft business," and because "he wanted to make it clear that he was not being mean, he was just doing business in the free market."[12]

Plaintiff alleges that Deputy Dupont's wife overheard his remarks about the taxes and repeated them to Deputy Dupont.[13]  Plaintiff further alleges that, later that day, Deputy Dupont removed Plaintiff from the Angola Rodeo grounds, telling Plaintiff that, "his wife . . . informed him that [Plaintiff] was telling the people about the inmates being taxed a percentage from the sale of their hobby craft."[14]  Plaintiff claims that, "in anger, [Deputy Dupont] vehemently" prohibited

---

[9] The Court adopts the facts and procedural history as set forth in the opinion rendered by the Fifth Circuit Court of Appeals in this matter.  *See*, *Turner v. Cain*, 647 Fed. Appx. 357 (5th Cir. 2016) (unpublished).  The Fifth Circuit's opinion can also be found in the record of this matter at R. Doc. 67.
[10] R. Doc. 1.
[11] *Id.* at ¶ I.
[12] *Id.*  The Fifth Circuit found that, "Such taxes were, in fact, imposed by Warden Cain."  *Turner*, 647 Fed. Appx. at 360.  The Fifth Circuit noted that, "According to Warden Cain himself, 'taxes were raised for the following reasons: . . . 11% tax is used to rebuild, maintain, or add new [hobby craft facilities,] . . . 9% [Feliciana] Parish tax . . . , 2-3% taxes [sic] were charged by [c]redit [c]ard [c]ompanies . . . .'  The parties do not seem to dispute that these taxes were levied against the seller, not the buyer."  *Id*. at 360, n. 1.
[13] R. Doc. 1 at ¶ II.
[14] *Id.*

Plaintiff from returning to the Angola Rodeo grounds to sell crafts.[15]  Plaintiff claims that he "was never informed by Warden Cain during the 'rodeo prep meetings' that inmates were not allowed to talk about the tax percentages with the public," and that, "there w[ere] no written policies or posted memorandums [sic] that informed the inmates that sold hobby craft they could not tell potential customers about the 18% and 22% tax inmates pay upon the sale of their hobby craft."[16] Plaintiff asserts that he "had no knowledge that if he shared the tax information with the public he would be punished for doing so."[17]

Plaintiff alleges that Deputy Dupont "did not at any point and [sic] time write a disciplinary report up, charging [Plaintiff] with any rule violations."[18]  Despite the absence of any prior restraint on his speech, Plaintiff was added to a list of 15-or-so "Inmates That [H]ad Rodeo Violations."[19] The list indicated that Plaintiff had "Bribe[d] the Public"[20] (and that most of the others had "G[iven] Interview[s] To the Media" or "Failed Drug Test[s]").[21]

Plaintiff alleges that two days after he was removed from the Angola Rodeo grounds, Deputy Dupont met with Warden Cain about each of the violations that had occurred during the Angola Rodeo and that ten days later, Warden Cain had transferred Plaintiff and most, if not all, of the other prisoners on Deputy Dupont's list from Angola to other LDOC facilities.[22]  Plaintiff asserts that as the inmates were being transferred, Deputy Vannoy "met with [them at the gate] and said that . . . Warden Cain don't want to talk to any of you[;] he is angry and displeased with

---

[15] *Id.*
[16] *Id.* at ¶ XIII.  The Fifth Circuit further found that, "There is nothing in the record that suggests any restrictions on his speech existed." *Turner*, 647 Fed. Appx. at 360.
[17] R. Doc. 1 at ¶ XIII.
[18] *Id.* at ¶ II.
[19] *Turner*, 647 Fed. Appx. at 360.
[20] The Fifth Circuit noted in its April 28, 2016 opinion that, "Although prison regulations presumably prohibit such conduct, neither party asserts that is what actually took place." *Turner*, 647 Fed. Appx. at 360, n. 2.
[21] *Id.*
[22] *See*, R. Doc. 1 at ¶ III.

your behavior during the [R]odeo because you did whatever it was you did, he has decided to transfer you."[23]  Plaintiff asserts that he was transferred to Elayn Hunt Correctional Center, where he spent approximately 59 days before being transferred to David Wade Correctional Center.[24]

On September 24, 2012, Plaintiff filed a Complaint as a *pro se* litigant against Warden Cain, Deputy Dupont and Deputy Vannoy in their official and individual capacities, asserting that they violated Plaintiff's First Amendment rights by retaliating against Plaintiff for exercising his right to free speech at the Angola Rodeo.[25]  Plaintiff alleges that, as a result of that retaliation, he (1) suffered a number of hardships as a result of the transfers, (2) lost his lucrative job, (3) was separated from some of his belongings, and (4) remains isolated from his friends and family.[26]  Plaintiff seeks compensatory and punitive damages.[27]

On March 15, 2013, Warden Cain, Deputy Dupont and Deputy Vannoy moved to dismiss Plaintiff's retaliation claims under Fed. R. Civ. P. 12(b), asserting that Plaintiff had failed to state a claim and that they were entitled to Eleventh Amendment immunity and qualified immunity.[28]  On April 29, 2013, Magistrate Judge Stephen C. Riedlinger recommended that all of Plaintiff's claims be dismissed, except for Plaintiff's claim against Warden Cain in his individual capacity for transferring Plaintiff to Elayn Hunt Correctional Center.[29]  On May 15, 2013, District Judge James J. Brady adopted Magistrate Judge Riedlinger's recommendations over Plaintiff's objections.[30]

---

[23] R. Doc. 1 at ¶ III.
[24] *Id*. at ¶¶ IV - VI.
[25] R. Doc. 1.
[26] *Id*. at ¶¶ III, IV, V, VI, VII, XI.
[27] R. Doc. 1 at ¶ V.
[28] R. Doc. 19.
[29] R. Doc. 24.
[30] R. Doc. 28; *See*, R. Doc. 27.

Thereafter, Plaintiff and Warden Cain each moved for summary judgment under Fed. R. Civ. P. 56.[31]  Specifically, Warden Cain alleged that he was entitled to qualified immunity and Eleventh Amendment immunity, and that there were no genuine issues of material facts at issue.[32]

On November 4, 2013, Magistrate Judge Riedlinger recommended that Plaintiff's remaining retaliation claim against Warden Cain be dismissed because Plaintiff's statements regarding the prison "taxes" imposed by Warden Cain did not constitute protected speech under the First Amendment.[33]  Magistrate Judge Riedlinger found that because Plaintiff could have challenged the tax through the prison grievance procedure rather than publicly, "The manner of [Plaintiff's] expression was inconsistent with his status as a prisoner and therefore is not afforded First Amendment protection."[34]  Because Plaintiff had not demonstrated a violation of his constitutional rights, Magistrate Judge Riedlinger found that Warden Cain was entitled to summary judgment as a matter of law.[35]  Magistrate Judge Riedlinger did not address Warden Cain's arguments regarding qualified immunity or Eleventh Amendment immunity.  On February 18, 2014, District Judge Brady adopted Magistrate Judge Riedlinger's recommendations over Plaintiff's objections and dismissed the case.[36]

On March 5, 2014, Plaintiff filed a Notice of Appeal, seeking review of the February 18, 2014 decision dismissing the case.[37]  On April 28, 2016, the Fifth Circuit issued an opinion affirming in part, reversing in part, and remanding the matter back to this Court for further proceedings.  *Turner v. Cain*, 647 Fed. Appx. 357 (5th Cir. 2016) (unpublished).[38]  The Fifth

---

[31] R. Docs. 48 and 54.
[32] R. Doc. 48-2.
[33] R. Doc. 55 at pp. 7-8.
[34] *Id*. at p. 7.
[35] *Id*. at p. 8.
[36] R. Doc. 58; *See,* R. Doc. 56.
[37] R. Doc. 60.
[38] *See,* R. Doc. 67.

Circuit found no error in this Court's dismissal of Plaintiff's retaliation claims against Deputy Dupont and Deputy Vannoy based upon Plaintiff's transfer out of Angola, as Plaintiff's allegations indicated that the decision to transfer him was made by Warden Cain. *Id.* at 362.[39]  However, the Fifth Circuit found that this Court erred in dismissing Plaintiff's retaliation claim against Deputy Dupont based upon Plaintiff's removal from the Angola Rodeo grounds, which was more than a *de minimis* act of retaliation, as Plaintiff was denied the opportunity to sell his crafts, to profit from those sales and to interact with members of the public and the removal disrupted Plaintiff's longstanding record of good behavior at Angola.  *Id.*

Turning next to the adverse summary judgment ruling, the Fifth Circuit found that this Court erred in concluding that Plaintiff's statements regarding the prison "taxes" were not protected by the First Amendment because they constituted a grievance directed at Angola officials that was expressed outside the prison's grievance procedures.  *Id.* at 363.  Because this Court had incorrectly labeled Plaintiff's speech a grievance, the Fifth Circuit remanded "for the district court to consider whether his speech was otherwise consistent with 'legitimate penological interests.'" *Id*. at 364.  The Fifth Circuit advised that on remand, this Court should consider the factors set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), to determine (1) whether Plaintiff's speech was otherwise consistent with "legitimate penological interests," and (2) whether the Defendants could have limited his speech.  *Id*. at 363.[40]  The Fifth Circuit held that, "This determination will inform whether Turner's speech was protected—or

---

[39] As this was the only claim against Deputy Vannoy, Vannoy is no longer a defendant in this case.

[40] In *Turner v. Safley*, the Supreme Court held that the following factors should be considered in determining the reasonableness of a prison regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the availability of obvious, easy alternatives to the challenged regulation.  482 U.S. at 89-90, 107 S.Ct. at 2262.

not—under the First Amendment." *Id.* at 364. The Fifth Circuit also concluded that on remand, this Court "should appoint counsel for Turner." *Id.*

Following remand, on May 24, 2017, Warden Cain and Deputy Dupont (collectively, "Defendants") filed the instant Motion for Summary Judgment, asserting that Plaintiff's retaliation claims should be dismissed because Defendants are entitled to the defense of qualified immunity and because Plaintiff is unable to establish retaliatory intent, an essential element of his claims.[41] On July 11, 2017, Plaintiff filed a Motion to Strike Successive Motion for Summary Judgment, asserting that the Defendants' Motion for Summary Judgment should be stricken from the record because it raises the same issues as Warden Cain's prior Motion for Summary Judgment,[42] which issues were resolved by the Fifth Circuit in its April 28, 2016 opinion in this matter.[43] Thereafter, on September 21, 2017, Plaintiff filed a Motion to Strike Untimely Raised Defense, seeking to strike Defendants' assertion, raised for the first time in their Reply brief filed in support of their Motion for Summary Judgment, that they are entitled to summary judgment because Plaintiff's claims are prescribed.[44] Plaintiff asserts that because Defendants did not raise that affirmative defense in their Answer in accordance with Fed. R. Civ. P. 8(c)(1), it was effectively waived and should be stricken from the record pursuant to Fed. R. Civ. P. 12(f).[45]

## II. Law and Analysis

### A. Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552,

---

[41] R. Doc. 85 at p. 1.
[42] R. Doc. 48.
[43] R. Doc. 89 at p. 1.
[44] R. Doc. 102 (*citing* R. Doc. 97).
[45] R. Doc. 102 at p. 2.

91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### B.  Plaintiff's Motion to Strike Successive Motion for Summary Judgment

As previously mentioned, Plaintiff has moved to strike Defendants' Motion for Summary Judgment[46] on the basis that the issues raised therein have already been decided by the Fifth Circuit on appeal in this matter and, therefore, may not be re-litigated under the "law of the case"

---

[46] R. Doc. 85.

doctrine.[47]  Plaintiff points out that successive motions for summary judgment are disfavored, but acknowledges that, "a district court has discretion to allow successive motions, and in particular, a subsequent summary judgment motion based on an expanded record is permissible."[48]  Plaintiff argues that there has been no expansion of the record in this case that would justify a second or successive motion for summary judgment, as there has been no new discovery or intervening law since Warden Cain filed the prior Motion for Summary Judgment in this case.[49]  As such, Plaintiff asserts that the Defendants' Motion for Summary Judgment should be stricken from the record.

Defendants argue that Plaintiff's Motion to Strike should be denied because the pending Motion for Summary Judgment is not a successive motion for summary judgment.[50]  Although the instant Motion for Summary Judgment raises the issues of qualified immunity and Plaintiff's ability to establish retaliatory intent, which are some of the grounds for which dismissal and summary judgment were previously sought,[51] Defendants contend that neither this Court nor the Fifth Circuit Court of Appeals have addressed those issues.  Defendants point out that in ruling on the prior Motion to Dismiss[52] and the prior Motion for Summary Judgment,[53] this Court held that Plaintiff's allegations did not rise to the level of a constitutional violation and, therefore, the Court did not reach the issue of qualified immunity.[54]  Defendants also point out that on appeal, the Fifth Circuit held that Deputy Dupont's removal of Plaintiff from the Angola Rodeo grounds rose to the level of a constitutional violation and that Plaintiff's speech was not a grievance and

---

[47] R. Doc. 89 at p. 1; R. Doc. 89-1 at p. 4.
[48] R. Doc. 89-1 at p. 2 nn. 1-2 (citing *Allstate Finance Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961); *Enlow v. Tishomingo County, Miss.*, 926 F.2d 501, 506-07 (5th Cir. 1992)).
[49] R. Doc. 89-1 at pp. 2-3.
[50] R. Doc. 94.
[51] *See*, R. Docs. 19 and 48.
[52] R. Doc. 19.
[53] R. Doc. 48.
[54] *See*, R. Docs. 24, 28, 55, 58.

could not be restricted on that basis.[55]  Defendants further assert that under the law of this Circuit, successive motions for summary judgment are those that assert the same arguments as previously denied motions for summary judgment.[56]  Because the prior Motion for Summary Judgment[57] was granted by this Court and the Fifth Circuit reversed that ruling on constitutional grounds without addressing the issue of qualified immunity, Defendants argue that Plaintiff's Motion to Strike should be denied.

The Fifth Circuit generally does not approve of the piecemeal consideration of successive motions for summary judgment.  "Since defendants might well normally be held to the requirement that they present their strongest case for summary judgment when the matter is first raised, we do not believe the rules prohibit the consideration by a trial court of a second motion of this nature." *Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961).  More recently, the Fifth Circuit explained that, "a determination [to allow a successive motion for summary judgment], particularly regarding questions of the timing and sequence of motions in the district court, best lies at the district court's discretion."  *Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 507 (5th Cir. 1992).  The *Enlow* court further noted:

> As this Court has repeatedly said, "[t]he district court has broad discretion in controlling its own docket."  *Edwards v. Cass County, Texas*, 919 F.2d 273, 275 (5th Cir. 1990).  In fact, the district court may reconsider a previously denied summary judgment motion even in the absence of new material presented. *See Sewell Plastics, Inc. v. Coca–Cola Co.*, 720 F.Supp. 1196, 1215 (W.D.N.C. 1989), *aff'd in part and remanded in part*, 912 F.2d 463 (4th Cir. 1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1019, 112 L.Ed.2d 1101 (1991).

*Id*. at n. 16.  Thus, contrary to Plaintiff's position, this Court has the discretion to consider successive summary judgment motions, even those that are not based upon an expanded record.

---

[55] R. Doc. 94 at p. 3.
[56] *Id*. at pp. 4-6.
[57] R. Doc. 48.

The law of the case doctrine also does not bar this Court from considering the Defendants'
Motion for Summary Judgment. The law of the case doctrine provides that an issue of fact or law
decided on appeal may not be reexamined either by the district court on remand or by the appellate
court on subsequent appeal. *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (quotation
omitted). The Fifth Circuit has explained that, "This proscription covers issues we have decided
expressly and by necessary implication, reflecting the 'sound policy that when an issue is once
litigated and decided, that should be the end of the matter.'" *Id.* (quoting *United States v. United
States Smelting Ref. & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750 (1950)) (internal
citation omitted). However, the Fifth Circuit has also held that the law of the case doctrine is not
a limit on judicial power, but rather "an exercise of judicial discretion which 'merely expresses the
practice of courts generally to refuse to reopen what has been decided.'" *Lee*, 358 F.3d at 320
(quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)).

Here, the Defendants' Motion for Summary Judgment is not barred by the law of the case
doctrine because it does not raise the same issues that were previously decided by this Court or by
the Fifth Circuit Court of Appeals. The Defendants' Motion for Summary Judgment seeks
dismissal of Plaintiff's retaliation claims based upon the defense of qualified immunity and
Plaintiff's inability to establish retaliatory intent on the part of either Warden Cain or Deputy
Dupont.[58] Neither of those issues have been addressed by this Court or the Fifth Circuit in this
case. In ruling on the prior Motion to Dismiss,[59] this Court dismissed all claims made against
Warden Cain, Deputy Dupont and Deputy Vannoy in their official capacities based upon Eleventh
Amendment immunity, held that Plaintiff failed to allege any facts against Deputy Vannoy or
Deputy Dupont that rose to the level of a constitutional violation, but held that Plaintiff had stated

---

[58] *See*, R. Doc. 85-2 at pp. 1-2 and 8-11.
[59] R. Doc. 19.

a retaliation claim against Warden Cain for transferring Plaintiff out of Angola.[60]  In ruling on the

prior Motion for Summary Judgment,[61] this Court held that Plaintiff's speech regarding the prison

"taxes" constituted a grievance against an Angola official and, therefore, was not protected speech

under the First Amendment.[62]  Because Plaintiff had not demonstrated a violation of his First

Amendment rights, this Court found Warden Cain was entitled to summary judgment.[63]  This

Court did not reach the issue of qualified immunity or retaliatory intent in either ruling.[64]

On appeal, turning first to the Motion to Dismiss,[65] the Fifth Circuit affirmed this Court's

finding that Plaintiff had not stated a claim of retaliation against Deputy Vannoy or Deputy Dupont

based on Plaintiff's transfer out of Angola because Warden Cain made the decision to transfer

Plaintiff to another prison.  *Turner v. Cain*, 647 Fed. Appx. 357, 362 (5th Cir. 2016).  However,

the Fifth Circuit held that this Court erred in dismissing Plaintiff's claim of retaliation against

Deputy Dupont based on his removal of Plaintiff from the Angola Rodeo grounds, "which

constituted a retaliatory act for [Plaintiff's] 'speech' about Warden Cain's taxes."  *Id.*  With respect

to the Motion for Summary Judgment,[66] the Fifth Circuit held that this Court erred in classifying

Plaintiff's speech as a grievance "because it had nothing to do with his status as a prisoner" and,

"Significantly, Turner was addressing the public, not a prison official or another prisoner."  *Id.* at

363.  The Fifth Circuit held that because Plaintiff's speech was not a grievance, Angola officials

could not restrict Plaintiff's speech based on the Angola grievance procedures.  *Id.*  Further,

because this Court had incorrectly labeled Plaintiff's speech a grievance, the Fifth Circuit

remanded the matter to this Court to determine whether Plaintiff's speech was protected under the

---

[60] R. Doc. 24 at pp. 6-10; R. Doc. 28.
[61] R. Doc. 48.
[62] R. Doc. 55 at p. 7; R. Doc. 58.
[63] *Id.* at p. 8.
[64] *See*, R. Docs. 24, 28, 55, 58.
[65] R. Doc. 19.
[66] R. Doc. 48.

First Amendment and whether the Defendants could have restricted his speech. *Id*. at 363-64. The Fifth Circuit did not reach the issues of qualified immunity or retaliatory intent.

Based upon the foregoing, a ruling upon the instant Motion for Summary Judgment, which raises only the issues of qualified immunity and retaliatory intent, will not result in reconsideration of an issue of fact or law that was previously decided, directly or indirectly, by this Court or by the Fifth Circuit Court of Appeals. Accordingly, Plaintiff's Motion to Strike Successive Motion for Summary Judgment[67] should be denied.

### C.   Warden Cain and Deputy Dupont's Motion for Summary Judgment

Turning to the merits of the Motion for Summary Judgment, Defendants assert that Plaintiff's retaliation claims should be dismissed because Defendants are entitled to the defense of qualified immunity and because Plaintiff is unable to establish retaliatory intent, which is an essential element of his retaliation claims.[68]

#### 1.   Qualified Immunity

"Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A two-step analysis governs whether public officials are entitled to qualified immunity. *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). First, a court must determine "whether the facts, either as the plaintiff alleges or as provided without dispute, establish that the officer violated a clearly established constitutional right." *Id*. (citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)). If no constitutional right has been violated, the inquiry ends and the defendants are entitled to

---

[67] R. Doc. 89.
[68] R. Doc. 85 at p. 1.

qualified immunity. *Linbrugger*, 363 F.3d at 540 (citing *Price*, 256 F.3d at 369). If the plaintiff has alleged a constitutional violation, the court must next determine whether the public official's conduct was objectively unreasonable under established law. *Linbrugger*, 363 F.3d at 540 (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001)). The first prong of the analysis is governed by the currently applicable constitutional standards. *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325-26 (5th Cir. 1998) (quotation omitted). However, the touchstone of the inquiry under the second prong of the analysis is "whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (citation omitted). Thus, "[e]ven law enforcement officials who reasonably but mistakenly [commit a constitutional violation] are entitled to immunity." *Id*. (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)) (internal quotation marks omitted).

Here, Defendants assert that they are entitled to the defense of qualified immunity because Plaintiff is unable to establish that the alleged acts of retaliation—Deputy Dupont's removal of Plaintiff from the Angola Rodeo grounds and Warden Cain's decision to transfer Plaintiff out of Angola—violated Plaintiff's constitutional rights under the First Amendment.[69] While acknowledging that he bears the burden of proving that Defendants are not entitled to qualified immunity,[70] Plaintiff asserts that he was removed from the Angola Rodeo grounds for discussing the prison "taxes" on inmate goods with potential customers, in violation of his First Amendment right to free speech. Plaintiff does not address whether Warden Cain's decision to transfer him out of Angola violated Plaintiff's First Amendment rights, asserting that, "those claims have

---

[69] R. Doc. 85-2 at p. 8.
[70] R. Doc. 90 at p. 2 (citing *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).

15

already been resolved, and will not be addressed."[71]  Plaintiff further asserts that, "a prisoner's speech—like all speech—is presumed to be protected, irrespective of its content."[72]  Plaintiff also points out that Defendants have not produced any evidence to show that restricting Angola inmates from discussing the prison "taxes" during the Angola Rodeo furthers a legitimate penological interest.[73]

### a. Plaintiff's Speech Was Protected as It Was Consistent With His Status As A Prisoner and Legitimate Penological Interests

The Fifth Circuit has recognized that the precise contours of a prisoner's First Amendment right to free speech are obscure.  *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993); *See, Henslee v. Lopez*, 20 F.3d 470 (5th Cir. 1994) (unpublished).  However, "The Supreme Court has made it clear . . . that prisoners retain only those First Amendment rights which are 'not inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system.'"  *Brewer*, 3 F.3d at 821 (quoting *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974))).  The Fifth Circuit reached the same conclusion with respect to Plaintiff's retaliation claims in this case.  *See*, *Turner*, 647 Fed. Appx. at 363 ("Undoubtedly, 'a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" (quoting *Pell*, 417 U.S. at 822, 94 S.Ct. 2800)).  Thus, in order to establish that Deputy Dupont's removal of Plaintiff from the

---

[71] R. Doc. 90 at p. 2.  The Court notes that Plaintiff's retaliation claims against Warden Cain based upon Plaintiff's transfer out of Angola have not been resolved by this Court or the Fifth Circuit Court of Appeals.  As previously discussed, the Fifth Circuit held that this Court erred in granting Warden Cain summary judgment on Plaintiff's retaliation claim based on his transfer out of Angola. *See, Turner v. Cain*, 647 Fed. Appx. 357, 362-64 (5th Cir. 2016). The Fifth Circuit subsequently remanded the matter to this Court "to consider whether [Plaintiff's] speech was otherwise consistent with 'legitimate penological interests,'" and, therefore, "whether the defendants could have limited Turner's speech." *Id*. at 364.  Thus, contrary to Plaintiff's assertion, Plaintiff's retaliation claims against Warden Cain based upon Plaintiff's transfer out of Angola are still pending before this Court on remand.

[72] R. Doc. 90 at p. 4 (quoting *Turner*, 647 Fed. Appx. at 365 (Weiner, J., concurring) (internal footnotes omitted).

[73] R. Doc. 90 at p. 4.

Angola Rodeo grounds violated Plaintiff's First Amendment rights, Plaintiff must show that his statements regarding the prison "taxes" were consistent with his status as a prisoner and with the "legitimate penological objectives" of Angola.

The Fifth Circuit has already concluded in this matter that Plaintiff's speech "was not in the form of a grievance, and may not have been inconsistent with his status as a prisoner." *Turner*, 647 Fed. Appx. at 363. The Fifth Circuit explained that, "Turner's speech was not a grievance because it had nothing to do with his status as a prisoner. Turner made his remarks in an effort to explain that, because of the taxes, he could not reduce the price of his crafts. Significantly, Turner was addressing the public, not a prison official." *Id*. The Fifth Circuit further explained that, "As far as we can tell, none of the justifications for restricting a prisoner's speech to a grievance procedure is present. There is nothing to suggest that Turner's remarks to the public had the potential for inciting violence, disturbing order in the prison, or creating security concerns." *Id*. The Fifth Circuit pointed out that Plaintiff "was there because prison officials had permitted him to engage in a public event attended by large numbers of the public on prison grounds." *Id*. Because Plaintiff's speech was not a grievance and "may not have been inconsistent with his status as a prisoner," the Fifth Circuit held that Angola officials could not restrict Plaintiff's speech based on Angola's grievance procedure. *Id*.

Although the Fifth Circuit did not make a definitive ruling regarding whether Plaintiff's speech was consistent with his status as a prisoner, it appears implied by the fact that the Fifth Circuit remanded the matter "for the district court to consider whether [Plaintiff's] speech was otherwise consistent with 'legitimate penological interests.'" *Id*. at 364. The Fifth Circuit also instructed this Court to consider the factors set forth by the Supreme Court in *Turner v. Safley* to determine whether Plaintiff's statements were consistent with Angola's "legitimate penological

interests" and "whether the defendants could have limited Turner's speech." *Id*. at 364 (citing *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987)). The Fifth Circuit further held that, "This determination will inform whether Turner's speech was protected— or not—under the First Amendment." *Id*. Thus, according to the Fifth Circuit in this case, Plaintiff's statements regarding the prison "taxes" were protected under the First Amendment if they were consistent with legitimate penological interests, as determined by considering the factors set forth by the Supreme Court in *Turner v. Safley*.

In *Turner v. Safley*, the Supreme Court held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89, 107 S.Ct. at 2261. The Supreme Court further held that in determining the reasonableness of the prison regulation at issue, a court must consider the following factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources, generally; and (4) whether there exists obvious, easy alternatives to the regulation at issue. 482 U.S. at 89-90, 107 S.Ct. at 2262.

Although the parties failed to address the *Safley* factors in their summary judgment briefs,[74] Plaintiff correctly pointed out that Defendants have not submitted any evidence to show that restricting inmates from discussing the prison "taxes" furthers a legitimate penological interest.[75] More importantly, however, Defendants' summary judgment briefs are completely devoid of any allegation of a legitimate penological interest behind restricting Plaintiff's speech regarding the

---

[74] *See*, R. Docs. 85, 90, 97 and 101.
[75] *See*, R. Doc. 90 at p.4.

prison "taxes" at the Angola Rodeo.[76]  In remanding the matter back to this Court, the Fifth Circuit advised that in determining whether Plaintiff's speech was protected under the First Amendment, "The [district] court should also bear in mind that Cain offered in his summary judgment motion only a general justification for his contention that the speech was unprotected."  *Turner v. Cain*, 647 Fed. Appx. 357, 364 (5th Cir. 2016).  Defendants have failed to offer any further justification other than a general assertion that Plaintiff is unable to show that his speech was protected under the First Amendment.[77]  Because Defendants have failed to allege any legitimate penological interest that is furthered by restricting an inmate's speech regarding the prison "taxes" imposed on inmate crafts, the Court fails to see how Plaintiff's speech could have been "inconsistent with . . . the legitimate penological objectives of the corrections system."  *Id.* at 363 (quoting *Pell v. Procunier*, 417 U.S. at 822, 94 S.Ct. 2800) (internal quotation marks omitted).

Further, the Supreme Court has recognized that security, order and rehabilitation constitute legitimate penological objectives.  *Procunier v. Martinez*, 416 U.S. 396, 413-14, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413-14, 109 S.Ct. 1874, 1882, 104 L.Ed.2d 459 (1989).  As previously discussed, however, the Fifth Circuit has already concluded in this case that, "There is nothing to suggest that Turner's remarks to the public had the potential for inciting violence, disturbing order in the prison, or creating security concerns.  He was there because prison officials had permitted him to engage in a public event attended by large numbers of the public on prison grounds."  *Turner*, 647 Fed. Appx. at 363.  Because there is no information before the Court indicating that Plaintiff's speech was

---

[76] *See*, R. Docs. 85 and 97.
[77] *See*, R. Doc. 85-2 at pp. 8-9.

restricted to further a legitimate penological interest, Plaintiff's speech regarding the prison "taxes" imposed by Warden Cain was protected under the First Amendment.[78]

### b. Defendants' Actions Were Unreasonable Under Clearly Established Law

Plaintiff has shown that his speech was protected. To defeat Defendants' claim of qualified immunity, Plaintiff must also show that Defendants' actions were objectively unreasonable under clearly established law. *See*, *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). The Fifth Circuit has explained that the touchstone of the inquiry under the second prong of the qualified immunity analysis is "whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (citation omitted). Thus, "[e]ven law enforcement officials who reasonably but mistakenly [commit a constitutional violation] are entitled to immunity." *Id.* (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)) (internal quotation marks omitted).

---

[78] The Court notes that in their Statement of Uncontested Material Facts, Defendants allege that the following facts are uncontested in this case:

> 7. The Plaintiff was transferred from LSP to EHCC on April 28, 2011 ("Transfer").
> 8. Warden Cain authorized the Transfer in accordance with his duty, as Warden of LSP, to "conduct status reduction of [offender population] by transferring offenders that have been at LSP for ten years or more to another facility, in order make [sic] room for the large numbers of offenders coming into the LSP prison."

R. Doc. 85-1 at p. 2. While Defendants have arguably attempted to assert a legitimate penological interest (security) behind Warden Cain's decision to transfer Plaintiff out of Angola, there is no allegation, in the summary judgment briefs or Defendants' Statement of Uncontested Material Facts, to suggest that the same security interest was behind Deputy Dupont's removal of Plaintiff from the Angola Rodeo grounds. *See*, R. Docs. 85, 85-1 and 97. Additionally, Defendants' argument focuses on a rationale for the decision to transfer Plaintiff *after* the speech was made. The initial question under the qualified immunity analysis in this case is whether there was a legitimate penological interest to be served in restricting Plaintiff from discussing prison "taxes" with the public. As indicated above, the undersigned finds no evidence to support that there was such an interest as to Plaintiff's speech.

Plaintiff's removal from the Angola Rodeo grounds for his speech regarding the prison "taxes" and Plaintiff's transfer out of Angola twelve days later occurred in April 2011.[79]  At that time, the law was clear that, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *See*, *Turner v. Safley*, 482 U.S. 78, 95, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987) ("It is settled that a prison inmate 'retains those [constitutional] rights that are not inconsistent with this status as a prisoner or with the legitimate penological objectives of the corrections system.'" (quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804); *Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012) (same); *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) ("It is well-established that a prisoner retains certain First Amendment rights notwithstanding his incarceration. . . . In the First Amendment context, a prisoner retains only those rights 'that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'").

The Court has already found that Plaintiff's speech regarding the prison "taxes" was not inconsistent with any legitimate penological objectives of Angola.  No argument has even been asserted by Defendants that any effort to restrict Plaintiff's speech was to meet a legitimate penological interest.  To the contrary, the undisputed evidence alleged by Plaintiff was that he was never informed that he was not permitted to discuss the issue of "taxes" with the public and that he "had no knowledge that if he shared tax information with [members of the] public he would be punished for doing so.[80]  Additionally, no reports or disciplinary infractions were written regarding

---

[79] *See*, R. Doc. 1 at pp. 4-7.
[80] R. Doc. 1 at XIII.

Plaintiff's actions or speech at the Angola Rodeo.[81]   Under these circumstances—where there is clearly no legitimate penological interest to be furthered by the efforts to restrict a Plaintiff's speech, not even a prison policy in place that attempted to alert a speaker to the possibility that his speech might result in punishment, and no disciplinary report or infractions written—it is clear that Defendants' actions in punishing Plaintiff were objectively unreasonable.

Based on the foregoing, Deputy Dupont and Warden Cain are not entitled to summary judgment in this matter based upon the defense of qualified immunity.

## 2. Defendants' Retaliatory Intent

Defendants also allege that they are entitled to summary judgment because Plaintiff is unable to meet his burden of proving that the Defendants intended to retaliate against him based upon Plaintiff's statements at the Angola Rodeo.[82]   Defendants insist that Plaintiff can only meet this burden by proving "an underlying retaliatory motive behind the Removal and the Transfer" and further assert that Plaintiff "can point to no specific fact, testimony, or documentary evidence, of any kind, that provides substantiation of this essential element of his retaliation claims."[83]   In response, Plaintiff asserts that in order to prove retaliatory motive, he can either produce direct evidence of motivation or a chronology of events from which retaliation may plausibly be inferred.[84]   Plaintiff further asserts that the chronology of events is not significantly disputed in this case that he was removed from the Angola Rodeo grounds by Deputy Dupont "without any

---

[81] *See,* R. Doc. 47 at p. 5.

[82] R. Doc. 85-2 at p. 10.  Defendants also seem to conflate the retaliatory intent requirement with the causation requirement, asserting that, "**Simply put, the Plaintiff cannot demonstrate that 'but for' the alleged retaliatory motive, the Removal would not have occurred**."   *Id.* (emphasis in original).   However, because the bulk of Defendants' argument appears to focus upon Plaintiff's inability to show that Defendants intended to retaliate against Plaintiff for exercising his First Amendment rights, the Court will focus on Defendants' contention that Plaintiff is unable to establish the retaliatory intent element of his claims.

[83] R. Doc. 85-2 at p. 10.

[84] R. Doc. 90 at pp. 3 and 5 (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

basis in discipline or other behavior warranting a report or investigation."[85]  Plaintiff claims that, "The well-pled facts, the answers to discovery, and the timeline all point towards removal because Mr. Turner accidentally blurted out a truth which the defendants preferred not to disclose – imposition of 'taxes' on inmate handcrafts."[86]  Plaintiff also alleges that there remain several genuine issues of fact in dispute, including whether Deputy Dupont's wife was present at the Angola Rodeo or whether Plaintiff has misidentified another female acquaintance or family member as Deputy Dupont's wife.[87]

It is well-established that prison officials may not retaliate against a prisoner for exercising his constitutional rights.  *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986).  To prevail on a claim of retaliation, an inmate must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendants intentionally retaliated against him for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against him by the defendants, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  Claims of retaliation by prison inmates are regarded with skepticism, however, lest federal courts embroil themselves in every adverse act that occurs within a penal institution.  *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).  Further, the inmate must allege more than his personal belief that he is the victim of retaliation.  *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).  To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must allege facts that directly indicate such

---

[85] R. Doc. 90 at p. 5.
[86] *Id.*
[87] *Id.*; *See*, R. Doc. 85-1 at p. 2; R. Doc. 85-2 at p. 10.

retaliatory intent or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson,* 110 F.3d at 310; *Woods,* 60 F.3d at 1166.

Here, Plaintiff's Complaint sets forth a chronology of events from which retaliation may plausibly be inferred. Plaintiff alleges that on April 16, 2011, he explained to patrons at the Angola Rodeo that he could not reduce his hobby craft prices because Warden Cain imposes certain "taxes" on the sales made by inmates.[88] Plaintiff asserts that at around 3:30 pm that afternoon, he was summoned by Deputy Dupont and escorted to "the Arena's Prison Compound Gate," where Deputy Dupont allegedly told Plaintiff that Deputy Dupont's wife had informed him that Plaintiff was telling patrons about the prison "taxes" imposed on prison goods at the Angola Rodeo.[89] Plaintiff alleges that he was immediately ordered to leave the Angola Rodeo grounds and that Deputy Dupont prohibited Plaintiff from participating in the sale of his hobby crafts on Sunday, April 17, 2011.[90] In his summary judgment briefs, Plaintiff points to discovery responses in the record to show that Deputy Dupont never wrote a disciplinary report or charged Plaintiff with any rule violations.[91] Plaintiff further alleges that on April 28, 2011, a mere 12 days after his removal from the Angola Rodeo grounds, Warden Cain ordered an emergency transfer of Plaintiff and 14 other inmates to another prison facility based upon the inmates' behavior at the Angola Rodeo.[92]

---

[88] R. Doc. 1 at p. 5.
[89] R. Doc. 1 at p. 5. In opposition to the Motion for Summary Judgment, Plaintiff notes that in their discovery responses, Defendants denied that Deputy Dupont's wife was at the Angola Rodeo on April 16th and 17th, 2011. R. Doc. 90 at p. 3 (*citing* R. Doc. 85-2 at p. 10, n. 8 (*citing* R. Doc. 35 at p. 2)).
[90] R. Doc. 1 at pp. 5-6. In opposing the Motion for Summary Judgment, Plaintiff points out that Defendants admitted in their discovery responses that Deputy Dupont ordered Plaintiff to leave the Angola Rodeo on April 16th and 17th, 2011. R. Doc. 90 at p. 3 (*citing* R. Doc. 35 at p. 2).
[91] R. Doc. 90 at p. 3 (*citing* R. Doc. 47 at p. 5).
[92] R. Doc. 1 at pp. 6-7.

Given this timeline of events, namely Plaintiff's removal from the Angola Rodeo grounds a few hours after he made statements regarding the prison "taxes" on inmate crafts and Plaintiff's transfer out of Angola a mere 12 days after making those statements, as well as the Defendants' answers to discovery in the record,[93] Plaintiff has alleged a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Accordingly, Defendants have failed to meet their burden with regard to whether the Defendants' actions were retaliatory in motive. *See*, *Adams v. Bailey*, Civ. A. No. H-12-2520, 2014 WL 975685, at *8 (S.D. Tex. Mar. 12, 2014).

To the extent Defendants assert that Plaintiff is unable to show that but for the alleged retaliatory motive the removal would not have occurred,[94] Plaintiff has also raised a genuine issue of material fact with respect to the causation element of his retaliation claims. With respect to Plaintiff's removal from the Angola Rodeo grounds, Defendants have not alleged, much less submitted evidence to show, that Plaintiff's removal from the Rodeo was for any reason other than retaliation for his speech regarding the prison "taxes." With respect to Warden Cain's decision to transfer Plaintiff out of Angola, there is evidence in the record to support Defendants' assertion that Plaintiff was transferred out of Angola for security reasons.[95] However, that evidence relies upon an August 1, 2013 Affidavit from Warden Cain which states that Plaintiff, "was not transferred out of LSP for *disciplinary* reason [sic] as erroneously stated in the transfer order. He was transferred for status reduction authorized by Department Regulation B-02-001."[96] A copy of the "Transfer Order" mentioned in Warden Cain's Affidavit is included in the record and states that the reason for Plaintiff's transfer out of Angola on April 28, 2011 was "A-Adm-

---

[93] *See*, R. Docs. 35 and 47.
[94] *See, supra*, n. 82.
[95] *See*, R. Doc. 85-1 at p. 2.
[96] R. Doc. 48-3 at ¶ 8 (emphasis added).

Disciplinary."[97]  However, as Plaintiff's point out, Defendants' discovery responses show that there is no record of any disciplinary infraction based upon Plaintiff's speech or actions at the Angola Rodeo.[98]  Thus, Defendants' own documents offer contradictory reasons for Plaintiff's transfer out of Angola.  Because Defendants have failed to meet their burden with regard to the elements of retaliatory intent and causation, Defendants are not entitled to summary judgment on Plaintiff's retaliation claims.

Based upon the foregoing, Defendants' Motion for Summary Judgment[99] should be denied as to qualified immunity and retaliation.[100]

### D.  Plaintiff's Motion to Strike Untimely Raised Defense

#### 1.  Defendants Did Not Waive the Affirmative Defense of the Statute of Limitations By Not Raising It In Their First Responsive Pleading

In the third motion currently pending before the Court, Plaintiff asks this Court to strike the affirmative defense raised for the first time by Defendants in their Reply brief filed in support of their Motion for Summary Judgment.[101]  Specifically, Defendants allege in their Reply brief that they are entitled to summary judgment because Plaintiff's claims are prescribed under the one-year prescriptive period set forth in Louisiana Civil Code article 3492.[102]  Plaintiff asserts that

---

[97] R. Doc. 48-5 at p. 2.

[98] R. Doc. 90 at pp. 3-4 (*citing* R. Doc. 47, Responses to Request for Production Nos. 13 and 14).

[99] R. Doc. 85.

[100] In their Reply brief, Defendants also seek to strike the exhibits attached to Plaintiff's Opposition Memorandum. R. Doc. 97 at pp. 1-6 (*citing* R. Docs. 90-1 through 90-4).  The Court will not consider this request, however, because it is not properly before the Court.  In order for the Court to have considered this request, Defendants should have filed a separate motion to strike instead of including the motion within its Reply brief.  *See*, *Alenco Holding Corp. v. Win-Dor Systems, Inc.*, Civ. A. No. 3:01-CV-1054, 2002 WL 226368, at *1, n.1 (N.D. Tex. Feb. 13, 2002).  Defendants also assert in their Reply brief that their Statement of Uncontested Material Facts (R. Doc. 85-1) should be deemed admitted by this Court and that they are entitled to summary judgment because Plaintiff is unable to establish all of the essential elements of his retaliation claims.  R. Doc. 97 at pp. 6-10 and 12-15.  Because Plaintiff has shown that a genuine issue of material fact exists regarding the Defendants' retaliatory intent, the Court does not address these additional arguments raised in the Defendants' Reply brief.

[101] R. Doc. 102 (*citing* R. Doc. 97 at pp. 10-12).

[102] R. Doc. 102 (*citing* R. Doc. 97).

because Defendants did not raise that affirmative defense in their Answer to the Complaint,[103] in accordance with Fed. R. Civ. P. 8(c)(1), the defense was effectively waived and should be stricken from the record pursuant to Fed. R. Civ. P. 12(f).[104]   Relying upon several Fifth Circuit cases, Defendants assert that they have not waived the affirmative defense of the statute of limitations because they raised the issue at a pragmatically sufficient time and Plaintiff was not prejudiced in his ability to respond to their arguments.[105]

It is well-settled in this Circuit that Fed. R. Civ. P. 8(c) requires that an affirmative defense be set forth in a defendant's first responsive pleading and that failure to comply with this rule usually results in a waiver. *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) (citing *Starcraft Co. v. C.J. Heck Co.*, 748 F.2d 982, 990 n.11 (5th Cir. 1984)).  However, the Fifth Circuit has held that, "While it is true that failure to abide by Rule 8(c) leads to waiver, there is some play in the joints." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008).  The Fifth Circuit has explained that where an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal.  *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 866-56 (5th Cir. 1983).  "More specifically, a defendant does not waive an affirmative defense if it is raised at a 'pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"  *Rogers*, 521 F.3d at 386 (quoting *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007)) (internal quotation marks omitted).

At least one court in this Circuit has held that an affirmative defense raised for the first time in a reply brief filed in support of a motion for summary judgment was raised at a

---

[103] R. Doc. 23.
[104] R. Doc. 102 at p. 2.
[105] R. Doc. 103 at pp. 1-3.

pragmatically sufficient time and that the plaintiff was not prejudiced by the late notice given because the court had allowed the plaintiff to file a sur-reply to address the issue. *Seal v. Maverick Claims, LLC*, Civ. A. No. 14-245, 2015 WL 4509629, at *5 (E.D. La. July 24, 2015). Here, Defendants concede in their Reply brief filed in support of their Motion for Summary Judgment[106] that they had not previously asserted that Plaintiff's retaliation claims are time-barred by the statute of limitations.[107] A review of the record reveals that Defendants' Reply brief was filed 54 months after Defendants filed their Answer to the Complaint in this matter.[108] While such a lengthy delay appears, at first blush, presumptively prejudicial to Plaintiff in this case, the Fifth Circuit has held that a plaintiff was not prejudiced by a 52-month delay between a defendant's first responsive pleading and his assertion of qualified immunity as an affirmative defense because substantial time remained before trial for the plaintiff to respond. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577-78 (5th Cir. 2009). In *Pasco*, the Fifth Circuit found no evidence of prejudice where the defendant had asserted qualified immunity two months before discovery was due and six months before the pretrial conference and the plaintiff had submitted a full response to the defense at both the trial court and the appellate level. *Id*. at 578. Like in *Pasco*, Defendants raised the affirmative defense of the statute of limitations a year before the pre-trial conference[109] and Plaintiff was allowed to file a Sur-Reply brief addressing the Defendants' arguments regarding the defense.[110] As such, Defendants raised the affirmative defense of the running of the statute of limitations at a pragmatically sufficient time and Plaintiff was not prejudiced in his ability to respond to the Defendants' arguments regarding prescription.

---

[106] R. Doc. 85.
[107] *See*, R. Doc. 97 at p. 10.
[108] *See*, R. Docs. 23 and 97.
[109] *See*, R. Doc. 92 at p. 2.
[110] *See*, R. Doc. 101.

Because Defendants did not waive the affirmative defense that the statute of limitations has run on Plaintiff's retaliation claims, the Court must now turn to the issue of whether it is appropriate to address this ground for summary judgment raised for the first time in reply. A court may decline to consider a new argument in support of a motion for summary judgment raised for the first time in a reply brief. *See John Deere Co. v. Am. Nat'l Bank, Stafford,* 809 F.2d 1190, 1192 (5th Cir. 1987)(holding that it is error for a court to grant summary judgment on a ground not properly raised); *see also, Mannatech v. Blycobiotics Inter'l, Inc.,* 03-06-CV-0471-BD, 2008 WL 918311 (N.D. Tex. March 13, 2008)( court will not consider on summary judgment a new argument raised in a reply brief). In those cases, unlike here, it does not appear that the opposing party was given an opportunity to respond to the new ground for relief through, for example, a sur-reply. *See, John Deere*, 809 F.2d at 1191-92 ("[t]his point certainly was not raised by the Bank in a manner that would be sufficient to put John Deere on notice that failure to present evidence of damages could be grounds for summary judgment.") Because the undersigned finds Plaintiff was given an opportunity to address Defendants new ground for summary judgment based on prescription by sur-reply and did, in fact, provide argument and evidence on this issue, a substantive analysis of Defendants' prescription argument follows.

## 2. Defendants Have Not Met Their Burden of Proving the Statute of Limitations Has Run On Plaintiff's Retaliation Claims

In their Reply brief filed in support of their Motion for Summary Judgment, Defendants assert that Plaintiff's retaliation claims are time-barred because Plaintiff failed to timely assert his claims within the one-year prescriptive period set forth in Louisiana Civil Code article 3492.[111] Defendants contend that, at the very least, both of Plaintiff's retaliation claims accrued on April 28, 2011, the day Plaintiff was allegedly transferred out of Angola based upon his speech at the

---

[111] R. Doc. 97 at pp. 10-12.

Angola Rodeo on April 16, 2011.[112]  Defendants assert that Plaintiff's administrative grievance, ARP No. LSP-2011-1642, was received on July 12, 2011,[113] that Plaintiff received a Second Step Response denying his ARP on October 10, 2011,[114] and that Plaintiff filed the Complaint in this case on September 24, 2012.[115]  Although Defendants assert that the one-year prescriptive period was suspended during the pendency of Plaintiff's ARP, Defendants contend that Plaintiff's claims are prescribed because 75 days elapsed between the accrual of Plaintiff's claims on April 28, 2011 and the submission of Plaintiff's ARP on July 12, 2011, and that another 350 days elapsed between the denial of Plaintiff's ARP on October 10, 2011 and the filing of the Complaint on September 24, 2012, for a total of 425 days.[116]

Plaintiff, assuming without admitting that Defendants' dates are correct, readily admits that this suit was filed more than a year after Plaintiff's injury "on or about April 11, 2011."[117]  However, Plaintiff asserts that he filed a Petition for Judicial Review on or about November 9, 2011 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, which interrupted the prescriptive period on his retaliation claims, and that the dismissal without prejudice of that suit re-started the applicable one-year prescriptive period on Plaintiff's claims.[118] Plaintiff cites an opinion from the Fifth Circuit in support of this assertion.[119]  Plaintiff contends that the Louisiana Department of Corrections ("LDOC"), the defendant in the state court case, was served on March 12, 2012, and that the LDOC's attorney was a full participant in the suit, filing

---

[112] *Id.* at p. 11.

[113] *Id.* at pp. 11-12 (*citing* R. Doc. 5-1 at p.2).  A review of the document cited by Defendants reveals that although Plaintiff's ARP No. LSP-2011-1642 was dated July 12, 2011, it was actually received on July 13, 2011.  *Id.*

[114] R. Doc. 97 at p. 12 (*citing* R. Doc. 5-1 at p. 1).

[115] *See*, R. Doc. 1.

[116] R. Doc. 97 at p. 12.

[117] R. Doc. 101 at p. 5.

[118] *Id.* at pp. 5-8 (*citing* R. Doc. 101-3).

[119] R. Doc. 101 at pp. 6-8 (citing *Gonzalez v. Seal*, 677 Fed. Appx. 918 (5th Cir. 2017)).

pleadings on behalf of the LDOC.[120]  Plaintiff further asserts that the state court matter was dismissed without prejudice on or about September 10, 2012, at which point the one-year prescriptive period began to run anew on his retaliation claims.[121]  As such, Plaintiff asserts that the instant suit, which was filed on September 24, 2012, two weeks after the dismissal of the state court case, is not barred by prescription.

As both parties correctly point out, "Federal courts look to federal law to ascertain when a § 1983 action accrues and the limitations period begins to run, but 'state law supplies the applicable limitations period and tolling provisions.'"  *Gonzalez v. Seal*, 677 Fed. Appx. 918, 921 (5th Cir. 2017) (quoting *Harris v. Hegmann*, 198 F.3d 153, 156-67 (5th Cir. 1999)).  According to the Fifth Circuit, "In Louisiana, the applicable limitations period is one year."  *Gonzalez*, 677 Fed. Appx. at 921 (citing *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); La. Civ. Code art. 3492).  However, Louisiana Civil Code article 3462 provides that Louisiana's applicable one-year prescriptive period is interrupted when an action is commenced "in a court of competent jurisdiction and venue."  La. Civ. Code art. 3462.  Article 3462 further provides that, "If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period."  *Id.*

In the instant case, there is no dispute that the actions giving rise to Plaintiff's retaliation claims occurred on April 16, 2011 and April 28, 2011 and, therefore, Plaintiff's claims accrued no later than April 28, 2011.  There is also no dispute that under Louisiana law, the one-year prescriptive period on Plaintiff's claims was suspended while Plaintiff's administrative grievance, ARP No. LSP-2011-1642, was pending.  However, the parties seem to disagree as to whether the one-year prescriptive period applicable to Plaintiff's retaliation claims was interrupted during the

---

[120] *Id.* at p. 8 (*citing* R. Doc. 101-10).
[121] R. Doc. 101 at p. 7.

pendency of Plaintiff's Petition for Judicial Review in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana. Although there is no mention of the state court Petition in the Defendants' Reply brief filed in support of their Motion for Summary Judgment[122] or in Defendants' Opposition brief to Plaintiff's Motion to Strike Untimely Raised Defense,[123] Plaintiff has provided the Court a copy of the Petition, which concerns ARP No. LSP-2011-1642 and Property Claim No. LSP 2011-1659 and which lists Warden Cain, Deputy Vannoy and Deputy Dupont, among others, as defendants.[124] Plaintiff has also submitted copies of additional pleadings and orders issued in the state proceeding,[125] including a Notice of Filing from the Clerk of Court of the Nineteenth Judicial District Court dated December 7, 2011,[126] Judge Timothy E. Kelley's September 6, 2012 Judgment dismissing the matter without prejudice,[127] and a copy of the docket from the state proceeding dated December 7, 2011 through September 10, 2012.[128] In the September 6, 2012 Judgment, Judge Kelley concluded that dismissal was required because Plaintiff had failed to state a cause of action regarding his request to be transferred back to Angola and because Plaintiff's request for monetary damages had been filed "in the improper mode and improper mandatory venue."[129] The docket sheet also indicates that "LA STATE PUBLIC SAFETY & CORR DEPT (HDQRTRS)" was personally served with a copy of the Petition on March 9, 2012 by the East Baton Rouge Parish Sheriff's Office.[130]

Defendants have failed to address whether the one-year prescriptive period applicable to Plaintiff's claims was interrupted by the filing of Plaintiff's state court Petition, despite having

---

[122] R. Doc. 97.
[123] R. Doc. 103.
[124] R. Doc. 101-3 at pp.1 and 3.
[125] *See*, R. Docs. 101-3 through 101-10.
[126] R. Doc. 101-3 at p. 11.
[127] R. Doc. 101-9.
[128] R. Doc. 101-10.
[129] R. Doc. 101-7 at p. 2.
[130] R. Doc. 101-10 at p. 4.

opportunity to do so. Instead of addressing Plaintiff's arguments in their Opposition brief filed in response to Plaintiff's Motion to Strike Untimely Raised Defense, Defendants merely re-urge the arguments made in their Reply brief filed in support of their Motion for Summary regarding why Defendants have not waived the affirmative defense of the statute of limitations.[131] As explained by the Fifth Circuit, a statute of limitations defense is an affirmative defense and the burden of proof is on the party who pleads it. *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011); *F.T.C. v. National Business Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004). Here, Defendants have not shown that Plaintiff's claims are prescribed because Defendants have not addressed Plaintiff's assertion, or the documentation submitted in support thereof, that the one-year prescriptive period on Plaintiff's retaliation claims was interrupted and, therefore, began to run anew when the state court proceeding was dismissed without prejudice on September 6, 2012.[132] Because Defendants have not shown that Plaintiff's retaliation claims are prescribed under Louisiana law, Defendants are not entitled to summary judgment based upon the affirmative defense that the statute of limitations has run on Plaintiff's claims. However, because the questions of the effect of the filing of the Petition for Judicial Review and the service (or lack thereof) on Warden Cain and Deputy Dupont of that Petition for Judicial Review were not adequately addressed by either side, to the extent this Report and Recommendation is adopted by the District Judge, the undersigned recommends that the denial of Defendants' summary judgment on prescription be without prejudice to Defendants reurging a motion for summary judgment limited

---

[131] R. Doc. 103; *See*, R. Doc. 97 at pp. 10-12.

[132] Although Warden Cain and Deputy Dupont were listed as defendants in the Petition for Judicial Review (R. Doc. 101-3 at p. 3), the only service information on the docket sheet relates to the Department of Corrections (R. Doc. 101-10 at p. 4). The undersigned does not make a determination about whether the Petition for Judicial Review interrupted prescription as to Warden Cain and Deputy Dupont.

to the issue of prescription within thirty (30) days of the Ruling of the District Judge adopting the Report and Recommendation.

### III.    Conclusion

Based on the foregoing, Defendants have not met their burden of proving that they are entitled to summary judgment on Plaintiff's retaliation claims based upon the defense of qualified immunity, Plaintiff's inability to establish retaliatory intent on the part of the Defendants, or the affirmative defense that the statute of limitations has run on Plaintiff's claims.  Plaintiff has likewise failed to meet his burden of proving that the instant Motion for Summary Judgment should be denied as a successive motion for summary judgment, as neither this Court nor the Fifth Circuit Court of Appeals previously addressed these issues.  Plaintiff has also failed to meet his burden of proving that Defendants waived the affirmative defense of the statute of limitations by raising the defense for the first time in Defendants' Reply brief filed in support of their Motion for Summary Judgment.  However, Defendants have not satisfied their burden of proving that Plaintiff's claims are prescribed under the one-year prescriptive period set forth in Louisiana Civil Code article 3492.

<u>**RECOMMENDATION**</u>

**IT IS RECOMMENDED** that the Defendants' Motion for Summary Judgment[133] be **DENIED.**  To the extent this Report and Recommendation is adopted, the undersigned further recommends that the denial of Defendants' summary judgment on prescription be without prejudice to Defendants reurging a motion for summary judgment limited to the issue of prescription within thirty (30) days of the Ruling of the District Judge adopting the Report and Recommendation.

---

[133] R. Doc. 85.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Strike Successive Motion for Summary Judgment[134] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Strike Untimely Raised Defense[135] also be **DENIED.**

Signed in Baton Rouge, Louisiana, on February 28, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[134] R. Doc. 89.
[135] R. Doc. 102.